UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| TINA MARIE MAYO | CASE NO. 3:19-CV-1658 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| ANDREW SAUL, COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

On March 22, 2017, Tina Marie Mayo protectively filed the instant applications for Title II disability insurance benefits and Title XVI supplemental security income payments. (Tr. 10, 157-170).[1] She alleged disability as of December 20, 2015, because of degenerative disk disease in the neck, severe nerve damage to the right hand, muscle loss in the left arm, unsuccessful surgeries on the left knee, and screws in the neck. (Tr. 196, 200). The state agency denied the claims at the initial stage of the administrative process. (Tr. 56-86, 90-97). Thereafter, Mayo requested and received a December 5, 2018, hearing before an Administrative Law Judge ("ALJ"). (Tr. 29-54). In a February 25, 2019, written decision, the ALJ determined

---

[1] Mayo filed a prior application for benefits, which was denied initially on August 29, 2005, and apparently not further appealed. (Tr. 196).

that Mayo was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 7-19). Mayo appealed the adverse decision to the Appeals Council. On October 21, 2019, however, the Appeals Council denied Mayo's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On December 19, 2019, Mayo filed the instant, pro se complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### The ALJ's Findings

**I. Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 13). At step two, he found that the claimant suffered severe impairments of bilateral carpal tunnel syndrome and residuals status-post carpal tunnel release; cervical stenosis and residuals status-post cervical decompression and fusion; and mild degenerative joint disease. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id*.

**II. Residual Functional Capacity**

The ALJ next determined that the claimant retained the residual functional capacity

("RFC") to perform sedentary work,[2] i.e., that that she can lift/carry ten pounds occasionally, five pounds frequently; stand/walk two hours and sit for six hours in an eight-hour workday. (Tr. 13-17). However, she is restricted by the inability to reach overhead, and with handling and fingering ability limited to frequent. *Id*.

### III. Steps Four and Five

With the assistance of a vocational expert ("VE"), the ALJ determined at step four of the sequential evaluation process that the claimant was unable to perform her past relevant work. (Tr. 17). Accordingly, he proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with a limited education, and the ability to communicate in English. *Id*. Transferability of skills was not material to the decision. *Id*.

The ALJ next observed that given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rule 201.19, Table 1, Appendix 2, Subpart P, Regulations No. 4; Tr. 18-19. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for work. *Id*. In response, the VE identified the representative jobs of surveillance system monitor, *Dictionary of Occupational Titles* ("DOT") Code # 379.367-010 - sedentary; and microfilm document preparer, DOT #

---

[2] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

5

249.587-018 – sedentary, that were consistent with the ALJ's RFC and the claimant's vocational profile.   (Tr. 18, 51-52).[3]

## Analysis

Pursuant to the court's scheduling order, plaintiff was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief."   (May 8, 2020, Sched. Order [doc. # 11]).   The order cautioned that "[t]he court will consider only those errors **specifically identified** in the briefs.   A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court."   *Id*.

From what the court may discern by way of plaintiff's memoranda and submissions, she principally relies on new evidence that post-dates the relevant period to argue that she is disabled.   That argument is addressed in further detail below.   However, the court also will briefly review the ALJ's decision for legal error and sufficiency of the evidence.

In assessing the severity of an impairment at step two of the sequential evaluation process, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."   *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985)).   However, when, as here, the ALJ's analysis proceeds beyond

---

[3] The VE responded that for the surveillance system monitor job, there were 13,229 positions available nationwide.   (Tr. 18, 51-52).   Furthermore, for the microfilm document preparer job, there were 64,347 positions available nationally.   *Id*.   This incidence of work constitutes a significant number (and range) of jobs in the "national economy."   42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required. *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n.1 (5th Cir. 1987). Rather, under these circumstances, the effect of the ALJ's step two determination is measured by whether his step three finding and RFC are supported by substantial evidence. This is so because once at least one severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. *See* 20 C.F.R. §§ 404.1545, 416.945. Indeed, the ALJ recited the foregoing regulation, and proceeded to consider the medical record and the aggregate impact of plaintiff's impairments. (Tr. 12).

To establish that a claimant's impairments meet or medically equal a listing at step three of the sequential evaluation process, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered. 20 C.F.R. § 404.1526(c). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present. *Selders*, 914 F.2d at 620. Here, plaintiff neither argues, nor makes the requisite showing that her impairments are of listing-level severity.

The court further finds that the ALJ's residual functional capacity assessment ("RFC") is supported by substantial evidence. In his decision, the ALJ reviewed the available evidence, including the hearing testimony, plaintiff's activities of daily living, treatment records, the results

7

of a consultative physical examination, and the impressions of the agency physician. (Tr. 13-17).

The relevant period at issue in this case spans over three years from the claimant's alleged onset date of disability in December 2015 until issuance of the ALJ's decision in February 2019. During this period, plaintiff experienced various exacerbations of her impairments pertaining to her cervical and lumbar spine, her arms and shoulders, and her knees. In addition to cervical, carpal tunnel release, and knee surgeries that pre-dated the period at issue, plaintiff underwent at least two surgeries during the relevant timeframe. For example, on August 15, 2017, she underwent right carpal tunnel release. (Tr. 412). Furthermore, in February 2018, she endured a C3-C6 posterior cervical decompressive laminectomy with bilateral foraminotomy and C3-6 posterior instrumental fusion. (Tr. 394-395).

However, plaintiff's treatment records indicate that her treating providers did not anticipate any enduring or significant limitations of functioning associated with these surgeries. For example, on July 19, 2017, physician's assistant, Robin Egan, stated that Mayo would experience job restrictions related to her carpal tunnel release for only two weeks after the surgery. (Tr. 354-357). Indeed, plaintiff herself apparently did not feel that her impairments were disabling because she told Egan that she wanted to have surgery as soon as possible because she intended to start a new job soon. *Id*. Similarly, following her cervical surgery, Dr. Sun stated that Mayo could engage in "Ad lib" activity, i.e., as much as desired/without restraint or limit, but with no lifting greater than ten pounds for one month. (Tr. 394). Of course, the ALJ's RFC did not exceed this limitation.

In fact, plaintiff has not identified any instances in the administrative record where her treating medical providers imposed any long-lasting limitations of functioning greater than the

8

limitations recognized by the ALJ. Certainly, no provider has indicated that she is disabled or unable to work. To the contrary, the only medical professionals to have assessed the effects of plaintiff's various impairments issued opinions that she was even less limited than what the ALJ determined in his RFC.

For example, on October 21, 2017, plaintiff underwent a consultative physical examination administered by Jason So, M.D., at the request of the state agency. (Tr. 387-391). She complained that she was unable to work because of knee, neck, and shoulder pain. *Id.* She reported left arm pain with atrophy, right wrist redness near the recent surgical wound, but otherwise denied joint swelling or pain. *Id.* Upon examination, she was able to shake hands and grip well. *Id.* She also managed to grab her bag and personal items at the end of the exam. *Id.* She was able to rise from a seated position without assistance. *Id.* She demonstrated poor effort with standing on toes and exhibited imbalance with tandem gait. *Id.* She also ambulated without an assistive device and was able to squat down and stand back up without difficulty. *Id.* Although Mayo had limited range of motion of the cervical spine, her range of motion in her other joints was normal. *Id.*

Dr. So diagnosed cervical spine injury, carpal tunnel syndrome, left ACL injury, status post-repair, and mild degenerative joint disease of the spine. *Id.* He opined that Mayo should be able to walk or stand for a full workday and did not require an assistive device for ambulation. *Id*. She also should be able to lift and carry objects that weighed 15-20 pounds without limitations. *Id.* She should be able to sit, hold a conversation, respond appropriately to questions, and carry out and remember instructions without difficulty. *Id.*

On November 8, 2017, non-examining agency physician, James Metcalf, M.D., reviewed the record and completed a physical residual functional capacity assessment form. (Tr. 68-70).

9

He opined that Mayo occasionally could lift and and/or carry twenty pounds, frequently lift about ten pounds and stand and/or walk for about six hours in an eight-hour workday. *Id.* She also could sit for six hours in an eight-hour workday. *Id.* She had no other limitations of functioning. *Id*. In other words, Dr. Metcalf opined that Mayo was capable of work at the light exertional level.

In his decision, the ALJ assigned "little weight" to Dr. So's findings regarding plaintiff's physical limitations because evidence at the hearing level indicated that she was more limited. (Tr. 16). Although the ALJ gave "great weight" to Dr. Metcalf's opinion regarding plaintiff's ability to sit, he otherwise assigned the opinion "little weight" -- again because evidence at the hearing level indicated that she was more limited. *Id*. Ultimately, the ALJ reduced plaintiff's RFC to a limited range of sedentary work, which represents a serious and significant limitation of functioning to account for the effects of plaintiff's impairments.

Of course, plaintiff contends that the ALJ did not go far enough. However, the ALJ relied on Mayo's daily activities, function report, and hearing testimony to support his RFC. (Tr. 14-17). He further noted that plaintiff stated that she needed to recline and elevate her legs, that she used a walker daily, that she wore a knee brace, and that she had difficulty looking up and down. *Id*. Ultimately, however, the ALJ emphasized that there was no indication that a walker was medically necessary or that any treating provider had imposed any significant limitation of functioning. (Tr. 17).[4]

---

[4] The court notes that on July 9, 2018, plaintiff was seen by physician's assistant, Johnathan Brewer, for her complaints of bilateral knee pain that had an onset date in 2008. (Tr. 448-457). Her pain was moderate and a six on a ten-point scale. *Id.* Associated symptoms included loss of motion and muscle weakness. *Id.* She stated that her left knee catches and gives way. *Id.* Her symptoms were aggravated by weight-bearing and movement. *Id.* Review of systems was positive for arthralgias, but negative for back pain, gait problems, joint swelling, myalgias, or neck pain and stiffness. *Id.* Furthermore, upon examination, Mayo had normal knee strength

10

At step five of the sequential evaluation process, the ALJ posited a hypothetical(s) to a vocational expert that contemplated plaintiff's vocational factors and RFC. It is manifest that a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's hypothetical(s) to the vocational expert substantially incorporated the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra*.[5]

Finally, in connection with her appeal to this court, plaintiff adduced additional treatment records that were not before the ALJ or the Appeals Council, and which post-date the Commissioner's final decision in this matter. In other words, these medical records were not part of the administrative record. Thus, at best, the court could remand the matter to the Commissioner for consideration of plaintiff's recently adduced evidence. However, the court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g)). To justify remand, the evidence must be "new," and not merely cumulative of what is already in the record. *Id.* (citation omitted). The evidence also

---

bilaterally. *Id.* Also, while the McMurray test was positive laterally, all other tests were negative. *Id.* In addition, x-rays of the knee were unremarkable. *Id.*, *see also* Tr. 458-459. Brewer diagnosed bilateral chronic knee pain and scheduled an MRI of the knee. *Id.*

    A July 31, 2018, MRI of the right knee showed soft tissue edema about the medial femoral condyle between the sartorius muscle and a tendon. (Tr. 472). There was mild intrinsic signal within the articular capsule, which suggested a low-grade sprain. *Id.*

[5] Plaintiff argues that the vocational expert testified that there were no other jobs available in the economy that she could perform. (Tr. 51-52). However, the vocational expert so testified in response to additional hypotheticals by plaintiff's counsel that incorporated further limitations beyond those sustained by the ALJ in his RFC.

11

must be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Id.*

Plaintiff's new medical records do not satisfy the foregoing criteria. The records are dated from July and September 2020. (Pl. Brief, Exhs. [doc. # 13].[6] However, there is no indication that the treatment record and diagnostic testing reflect plaintiff's impairments during the relevant period, i.e., as of the date of the ALJ's February 25, 2019, decision in this matter, as opposed to a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)).[7]

Plaintiff also has not suggested any explanation for her failure to incorporate the "new" evidence into the medical record. *Pierre, supra* (good cause for remand is not met unless plaintiff provides proper explanation to excuse her failure to submit the evidence earlier). "[T]he mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre*, 884 F.2d at 803 (citation omitted).

---

[6] Furthermore, plaintiff admitted in her reply brief that the new evidence was dated more than one year after the ALJ's decision. (Pl. Reply Brief, pg. 1 [doc. # 17]).

[7] The treatment record reflects new diagnoses for bipolar disorder and persistent insomnia. During the relevant period, however, non-examining agency psychologist Edith King, Ph.D., reviewed the record and opined that Mayo had no medically determinable mental impairments. (Tr. 66-67).
   Furthermore, the July 2020 MRIs of the thoracic and lumbar spine appear to document significant impairment. However, there is no evidence that this degree of impairment was present during the relevant period. To the contrary, a May 23, 2018, MRI of the lumbar spine showed but mild diffuse spondylosis, with no sign of any disc herniation or serious canal or foraminal stenosis. (Tr. 485-486).

12

In sum, plaintiff has neither established that the post-decision evidence is material, nor demonstrated good cause for failing to incorporate the evidence into the administrative record. *Pierre, supra*.[8] Accordingly, plaintiff is not entitled to remand. *Id*.

## **Conclusion**

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, he considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and according to plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).

No matter how sympathetic the court may be to plaintiff's situation, she still is obliged to establish that she is disabled *within the meaning of* the Social Security Act. The court emphasizes that it may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, *even if the evidence weighs against the Commissioner's decision*." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000) (emphasis added). The limited two-pronged issue before the court is whether the Commissioner's determination that plaintiff was not disabled under the Social Security Act is supported by substantial evidence and free of legal error. Upon review of the arguments presented, the court is satisfied that the Commissioner's decision meets the foregoing standard. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

---

[8] To the extent she has not already done so, plaintiff certainly may use the new evidence to support a *new* application for disability benefits.

13

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 4th day of January 2021.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE